THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LYMAN AVERY, Appellant.

Third Department, August 13, 1959.

*McGivern & Gibbons* (*Bernard T. McGivern* of counsel), for appellant.

*Charles A. Drake, Special District Attorney for Hamilton County,* for respondent.

Coon, J. Defendant was the County Treasurer of Hamilton County. As a result of a single trial he was found guilty on two separate indictments charging him with violations of section 1867 of the Penal Law. That section reads as follows: "§ 1867. Misappropriation by county treasurer. A county treasurer, who wilfully misappropriates any moneys, funds or securities, received by or deposited with him as such treasurer, or who is guilty of any other malfeasance or wilful neglect of duty in his office, is punishable by a fine of not less than five hundred dollars nor more than ten thousand dollars, or by imprisonment in a state prison not less than one year or more than five years, or by both such fine and imprisonment."

At the outset it should be observed that there is no charge, accusation or suggestion that the defendant did anything which comes within the legislative heading of the section — or within the first disjunctive portion of the body of the section. In other words, there is in this case no claim or suggestion that the defendant personally misappropriated any funds or that he profited or gained in any manner, directly or indirectly, from anything that happened within his office. Defendant was charged only with violations of that portion of section 1867 of the Penal Law which reads: "or who is guilty of any other malfeasance or wilful neglect of duty in his office".

There may well be a serious question as to the validity of that portion of section 1867 as a penal statute. It fails to specify any definite act or omission which is punishable. It does not define "malfeasance". It fails to specify any "duty in his office" which might be willfully neglected. The terms "malfeasance" and "wilful neglect of duty" are so vague and

general that resort must be had to sources outside the Penal Law to determine what specific acts or omissions are punishable. Whether this may be done under New York penal statutes is questionable. (Penal Law, § 22; cf. *People* v. *Brengard,* 265 N. Y. 100; *People* v. *Knapp,* 206 N. Y. 373; *People* v. *Firth,* 3 N Y 2d 472.) However, it is unnecessary in this case to determine the validity of the statute, the sufficiency of the indictments or the alleged errors in the course of trial, because we think the conviction must fall for lack of proof to support it.

Specifically, one indictment, which we regard as the more serious, accuses the defendant of " Malfeasance * * * a felony " in that he " did wrongfully and knowingly neglect to perform the duties of his office as provided by law in that he had knowledge in and about the month of August, 1957 that one Frederick H. Karuth, Deputy County Treasurer, had taken various sums of money belonging to the County of Hamilton and appropriated the same to his own use without authority of law and the said Lyman Avery, did not remove him from office but permitted him to act as said Deputy County Treasurer ". The other indictment accuses defendant of " Malfeasance or wilful neglect of duties, a felony " in that he " did wilfully, wrongfully and knowingly neglect to perform the duties of his office as provided by law in that he had knowledge and had been informed in or about the month of January, 1954 and thereafter that one Frederick Karuth, Deputy County Treasurer, did not have the ability or competence to carry out the duties of Deputy County Treasurer and that said Lyman Avery did not remove him from office but permitted him to act as said Deputy County Treasurer ".

The defendant took office as County Treasurer in January, 1952, and appointed one Karuth as his Deputy County Treasurer. In August of 1954 examiners of the State Department of Audit and Control discovered that proper books were not being kept by Karuth in accordance with a uniform system set up by the State, and that some entries were improperly made and in some cases omitted altogether. One of the examiners called this to the attention of the defendant and expressed doubt as to the competency of Karuth and doubt as to his ability to learn to properly keep the books in accordance with the system required. However, no definite suggestion was made that Karuth be discharged at that time, and in the course of general conversations the possibility of getting temporary, part-time experienced help from outside the county to aid and assist Karuth and teach him the system was discussed. Names of Deputy County Treasurers from other counties were mentioned, and one of them was

actually employed by defendant for a time to assist Karuth. It is quite apparent that defendant attempted to remedy the situation and to get the books in proper order. He expressed to the examiners the difficulty which he would encounter in trying to replace Karuth in Hamilton County. However, again in the Summer of 1957 a further audit was made, and "book shortages" were revealed because entries of receipts had not been made or entries were made in the wrong accounts. No actual shortage of money was discovered.

On August 12, 1957, Karuth volunteered to defendant that he was short not to exceed the sum of $500. So far as appears from the record this is the first time that anyone suspected any actual misappropriation or shortage of funds. Defendant promptly took Karuth to the office of the Principal Examiner of Municipal Affairs, had him repeat his admission, and asked for advice. He was told to report the matter to the District Attorney and was advised that it would be unwise to continue the deputy in office. Defendant did not actually discharge Karuth until September 5, after a State examiner had notified the District Attorney's office of the situation. It does not appear in the record that Karuth made any book entries or handled any cash during this period of approximately three weeks, nor does it appear that any shortage occurred during that period.

We may not indulge, without proof, in a natural inference that defendant kept his deputy during this short period in an effort to familiarize himself with the books, to ascertain the exact amount of the shortage and the specific incorrect book entries if any, or perhaps was endeavoring to recover the money from Karuth. Neither may the jury indulge, without proof, in an inference that defendant kept his deputy during this period for any corrupt, dishonest or illegal purpose. The facts are as consistent with innocence of any wrongdoing as with guilt. While the defendant did not personally make any entries in the books, the record shows that it is the general practice of County Treasurers to cause the books to be kept by a deputy or by other employees. In retrospect it was bad judgment to retain the deputy under the circumstances, but the evidence falls short of establishing any wrongful or corrupt motive or the commission of a felony.

While a County Treasurer may be civilly responsible for shortages incurred by an employee appointed by him, he may not be held criminally and feloniously liable for the acts of an employee in the absence of some evidence of collusion or corrupt and unlawful intent. As defendant's counsel succinctly states it in his brief, " the only wrong charged against him is that he hired

a certain man to be his Deputy and did not discharge him when someone else felt that he should be discharged.'' We are constrained to conclude that the record in this case establishes nothing more than that.

The judgment should be reversed and the indictments dismissed.

GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Judgment reversed and the indictments dismissed.